UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
Lewis Y. Liu                                              **Case No.: 1:24-cv-5137**

                                    Plaintiff,
                                                         COMPLAINT

          -against-

Henry T. Berger, Kathleen Hochul,
Peter S. Kosinski,
New York State Board of Election,

                                    Defendants
-------------------------------------------------------------

COMES NOW Plaintiff in the above styled action and respectfully shows this Honorable Court
as follows:

## THE PARTIES

1. That Plaintiff is a naturalized American citizen, and a registered Republican voter in the State
   of New York.

2. Defendant Honorable Kathleen Hochul is the Governor of New York State.
   Office: NYS State Capitol Building, Albany, NY 12224 | 518-474-8390

3. Defendants the New York State Board of Elections, Henry T. Berger and Peter S. Kosinski
   are the two Co-Chairs of the New York State Board of Elections
   Office: New York State Board of Elections,
   40 North Pearl Street, Suite 5, Albany, NY 12207-2729
   (518) 474-6220, Email: info@elections.ny.gov

## THE COMPLAINT

The State of New York (NYS) has long adopted the Winner-Take-All (**WTA**) method that
allocates NYS all electoral votes only to the winner of popular votes within the state. Since the
NYS has consistently voted for Democratic candidates in presidential elections since 1984,
Plaintiff's vote will almost certainly be debased to zero value relative to the votes for the
Democratic candidate in the upcoming 2024 Election, hence Plaintiff's voting right will be
violated/infringed under Amend. XIV and other constitutional provisions.

Following the court dismissal of SDNY#1:24-cv-812 and in accordance with the precedents of
*Baker v. Carr, Reynolds v. Simms,* and *Wesberry v. Sanders*, Plaintiff is refiling this case with the
aforementioned four defendants sued *ex officio* as the agency and persons ultimately responsible
for the conduct of presidential elections and the allocation of electoral votes in the State of New
York. Time is of the essence in this case, Plaintiff respectfully appeals to the Court to urgently
issue (1) a declaratory judgment that the WTA method is unconstitutional and (2) an injunction
restraining the named Defendants from allocating electoral votes under the WTA.

# TABLE OF CONTENTS

| Index | Section | Page |
|---|---|---|
| **I.** | Table of Contents | 2 |
| **II.** | Table of Authorities | 3 |
| **III.** | Constitutional Provisions and Statues Involved | 3 |
| **IV.** | Statement of Facts | 6 |
| **V.** | The Four Landmark Decisions by the Supreme Court | 7 |
| **VI.** | The Court of Appeals for the Second Circuit's Opinion on *Liu v. Congress* | 10 |
| **VII.** | Summary of the Arguments | 11 |
| | 1.  WTA Has No Textual Provision in the Constitution | 11 |
| | 2.  WTA Has No Textual Provision in the State Election Law | 11 |
| | 3.  WTA Causes Disenfranchisement | 11 |
| | 4.  WTA Causes Taxation without Representation | 11 |
| | 5.  WTA is Utterly Un-American | 11 |
| | 6.  WTA is Utterly Undemocratic | 12 |
| | 7.  WTA Violates the First Amendment Freedom of Speech | 12 |
| | 8.  WTA Violates the Due Process Clause | 12 |
| | 9.  WTA Violates the Equal Protection Clause | 12 |
| | 10. WTA Violates the Right to Vote Clause | 12 |
| | 11. WTA Violates the "One Person One Vote" Principle | 12 |
| | 12. WTA Has Suppressed Voter Participation | 13 |
| **VIII.** | Plaintiff Has the Standing to Sue | 14 |
| **IX.** | Proposed Remedy – the Equal Proportional method | 15 |
| **X.** | Conclusion | 16 |
| | **Appendices** | |
| **A** | The Second Circuit Court of Appeals' Opinion on *Liu v. Congress* | 17 |
| **B** | The 2020 Election Results – Electoral Votes Allocated by the WTA Method | 20 |
| **C** | The 2016 Election Results – Electoral Votes Allocated by the WTA Method | 21 |
| **D** | The 2020 Election Results – Electoral Votes Allocated by the Equal Proportional Method | 22 |

## II.    <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                  **Page**

<u>Baker v. Carr, 369 U.S. 186 (1962)</u> ........................................................................ *passim*

<u>Bush v. Gore, 531 U.S. 98 (2000)</u>.........................................................................10, 13

<u>Liu v. Congress (SDNY#19-cv-00311 / CASC#19-3054)</u> ....................................10, 17

<u>Marbury v. Madison, 5 U.S. 137 (1803)</u>........................................................................7

<u>McCulloch v. Maryland, 17 U.S. 316 (1819)</u> ..............................................................12

<u>Obergefell v. Hodges, 576 U.S. 644 (2015)</u> ...............................................................16

<u>Reynolds v. Sims, 377 U.S. 533 (1964)</u> ............................................................. 1, 8, 18

<u>Wesberry v. Sanders 376 U.S. 1 (1964)</u>...........................................................1, 9, 18

## III.    <u>CONSTITUTIONAL PROVISIONS AND STATUES INVOLVED</u>

**Constitutional Provisions**

1.  U.S. Const. Article II, Section 1, Paragraph 2 states:

    *Each State shall appoint, in such **Manner** as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.*

2.  U.S. Const. Amend. I states:

    *Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech.*

3.  U.S. Const. Amend. XIV, Section 1 states:

    *No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

4. U.S. Const. Amend. XIV, Section 2 states:

*But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.*

**Statues – State of New York Election Law**

ARTICLE 12—PRESIDENTIAL ELECTORS AND FEDERAL ELECTED OFFICERS
TITLE I—PRESIDENTIAL AND VICE-PRESIDENTIAL ELECTORS
Section
12–100. Electors of president and vice president.
12–102. Lists of electors; state board of elections to furnish.
12–104. Electoral college; meeting and organization.
12–106. Electoral college; vote of the electors.
12–108. Electoral college; certificate of vote, how distributed.
12–110. Electors; compensation.

1. Section 12-100 Electors of president and vice president

*At the general election in November preceding the time fixed by law of the United States for the choice of president and vice president of the United States, as many electors of president and vice president of the United States shall be elected, as this state shall be entitled to. Each vote cast for the candidates of any party or independent body for president and vice president of the United States and each vote cast for any write-in candidates for such offices shall be deemed to be cast for the candidates for elector of such party or independent body or the candidates for elector named in the certificate of candidacy of such write-in candidates.*

2. Section 12-102 Lists of electors; state board of elections to furnish

*The state board of elections shall prepare seven lists, containing both the names of the persons who were elected as electors and a canvass of the votes cast for each candidate for elector, together with a certificate of determination thereon by the state board of canvassers; procure to the same the signature of the governor; cause to be affixed thereto the seal of the state, and in behalf of the governor, send one copy of such certified list to the administrator of general services of the United States by registered mail and deliver the six other copies thus signed and sealed to the president of the college of electors immediately after his election.*

3. Section 12–104 Electoral college; meeting and organization

*The electors shall convene at the state capitol upon notice from, and at a place fixed by the secretary of state on the first Monday after the second Wednesday in December next following*

*their election. Those of them who shall be assembled at twelve o'clock noon of that day shall immediately at that hour fill, by majority vote, all vacancies in the electoral college occasioned by the death, refusal to serve, or neglect to attend at that hour, of any elector, or any vacancies occasioned by an equal number of votes having been given for two or more candidates. The electoral college being thus completed, they shall then choose a president and one or more secretaries from their own body.*

4. Section 12–106 Electoral college; vote of the electors

*Immediately after the organization of the electoral college, the electors shall then and there vote by ballot for president and vice president, but no elector shall vote for more than one person who is a resident of this state. They shall name in separate ballots the persons voted for as president and vice president. They shall make and sign six certificates of all the votes given by them, each of which certificates shall contain two distinct lists, one with the votes for president and one with the votes for vice president. There shall be annexed to each of the certificates one of the lists of electors which shall have been furnished to them by the state board of elections. They shall seal up the certificates so made and certify upon each that the lists of all the votes of this state given for president and vice president are contained therein.*

5. Section 12–108 Electoral college; certificate of vote, how distributed

*The president of the electoral college shall distribute certificates so made with the lists attached thereto in the following manner:*
1) *Forthwith, and before the fourth Wednesday in the said month of December, forward one certificate to the president of the United States senate at the seat of the federal government by registered mail.*
2) *Forthwith, and before the fourth Wednesday in the said month of December deliver two certificates to the state board of elections, one of which shall be held by it subject to the order of the president of the United States senate and the other shall be preserved for one year and shall be a part of the public records of the board and be open to public inspection.*
3) *On the following day forward two certificates to the administrator of general services at the seat of the federal government by registered mail.*
4) *Forthwith, and before the fourth Wednesday in the said month of December, deliver the other certificates to the chief judge of the United States District Court of the northern district of the state of New York.*

6. Section 12–110 Electors; Compensation

*Every elector of the state who shall attend at any meeting of the electoral college and give his vote at the time and place appointed by law, shall be entitled to receive for his attendance at such election, the sum of fifteen dollars per day, together with thirteen cents per mile each way from his place of residence by the most usual traveled route, to the place of meeting of such electors, to be audited by the comptroller upon the certificate of the secretary of state.*

## IV.    STATEMENT OF FACTS

1. **The Root Cause of American Revolution**: "Taxation without Representation"
   The <u>Resolutions of the Continental Congress October 19, 1765</u>, declared:
   *"That it is inseparably essential to the freedom of a people, and the undoubted right of Englishmen, that no taxes be imposed on them, but with their own consent, given personally, or by their representatives."*

2. **Declaration of Independence**
   The Declaration of Independence essentially established four founding principles:
   1) <u>Equality</u>: *We hold these truths to be self-evident, that all men are created equal.*
   2) <u>Unalienable Rights</u>: *that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.*
   3) <u>Republic</u>: *That to secure these rights, Governments are instituted among Men.*
   4) <u>Democracy</u>: *deriving their just powers from the consent of the governed.*

3. The 1824 Election is most famous for the "corrupt bargain," a deal in the House of Representatives that gave John Quincy Adams the presidency despite his winning fewer popular and electoral votes than Andrew Jackson. But the 1824 Election was also significant for another reason: it was the first election in which the majority of states used a statewide WTA method for choosing their presidential electors.

4. Today, 48 of the 50 states adopted the WTA method, only Maine and Nebraska adopted the Congressional District method.

5. <u>In the 2020 Election</u>, Biden took all 29 electoral votes after receiving 5,244,886 (60.9%) out of a total of 8,616,851 votes counted in the NYS. This means 39.1% of votes in NYS were totally debased to zero value. (Exhibit A)

6. In the 2020 Election, nationwide, a total of 158,429,631 votes were counted, 77,146,130 votes or 48.7% were completely debased to zero value. (Exhibit A)

7. <u>In the 2016 Election</u>, Clinton took all 29 electoral votes by receiving 4,556,124 (59.0%) out of a total of 7,721,453 votes counted in NYS. This means 41.0% of votes were totally discarded to zero value. (Exhibit B)

8. In the 2016 Election, nationwide, a total of 136,669,237 votes were counted, 70,815,721 votes or 51.8% were completely discarded to zero value. (Exhibit B)

9. The NYS electorate collectively has voted for the Democratic candidates in every presidential election since 1984. The 1980 Election was the last time the majority of the NYS electorate voted for a Republican candidate.

## V.   <u>THE FOUR LANDMARK DECISIONS BY THE SUPREME COURT</u>

1. In **_Baker v. Carr_**  369 U.S. 186 (1962), Plaintiff Charles Baker was a Republican who lived in Shelby County, Tennessee. At the time of Baker's lawsuit, the population in his state assembly district in Shelby County had about ten times as many residents as some of the rural districts. Baker challenged that this discrepancy caused him to fail to receive the "equal protection of the laws" the Fourteenth Amendment requires. Defendant Joe Carr was sued in his position as Tennessee Secretary of State. Carr was not the person who set the district lines – the state legislature had done that – but was sued **_ex officio_** as the person ultimately responsible for the conduct of elections in the state and the publication of district maps.

The question presented to the court: _Did the Supreme Court have jurisdiction over questions of legislative apportionment?_

The Supreme Court in a 6-to-2 decision (1) overturned the District Court's dismissal, (2) affirmed the plaintiffs' standing to challenge the existing unfair apportionment for state assembly districts, (3) declared the Court possessed jurisdiction of the subject matter, and (4) the district court is expected to "_fashion relief if violations of constitutional rights are found_". Writing for the Court, Justice William J. Brennan Jr. declared:

1) _The District Court had jurisdiction of the subject matter of the federal constitutional claim asserted in the complaint._
2) _Appellants had standing to maintain this suit._
3) _The complaint's allegations of a denial of equal protection presented a justiciable constitutional cause of action upon which appellants are entitled to a trial and a decision._

_These plaintiffs and others similarly situated, are **denied the equal protection of the laws** accorded them by the Fourteenth Amendment to the Constitution of the United States by virtue of the debasement of their votes," was dismissed by a three-judge court ... We hold that the dismissal was error, and remand the cause to the District Court for trial and further proceedings consistent with this opinion._

_Since the complaint plainly sets forth a case arising under the Constitution, the subject matter is **within the federal judicial power defined in Art. III, 2**._

_An unbroken line of our precedents sustains the federal courts' jurisdiction of the subject matter of federal constitutional claims of this nature._

_**A citizen's right to a vote free of arbitrary impairment by state action** has been judicially recognized as a right secured by the Constitution…_

_They are entitled to a hearing and to the District Court's decision on their claims. "**The very essence of civil liberty certainly consists in the right of every individual to claim the protection** of the laws, whenever he receives an injury." **Marbury v. Madison**._

*We conclude that the complaint's allegations of a denial of equal protection present a justiciable constitutional cause of action upon which appellants are entitled to a trial and a decision.* **The right asserted is within the reach of judicial protection under the Fourteenth Amendment***.*

2.  In **Reynolds v. Sims** 377 U.S. 533 (1964), voters from Jefferson County, Alabama, home to the state's largest city of Birmingham, challenged the apportionment of the Alabama Senate where the ratio of voters per state senator varied as great as 41 to 1 from one senatorial district to another. The case was named for M. O. Sims, one of the plaintiffs, and B. A. Reynolds, a probate judge in Dallas County, one of the named defendants in the original suit, as a symbolic representative of all probate judges in the state of Alabama.

    The question presented to the court: *Did Alabama's apportionment scheme violate the Fourteenth Amendment's Equal Protection Clause by mandating at least one representative per county and creating as many senatorial districts as there were senators, regardless of population variances?*

    The Supreme Court in an 8-to-1 decision agreed with the District Court's decision and affirmed (1) the right to vote is the fundamental right protected by the Constitution, (2) weighting votes differently based on residence is not justifiable, and (3) population must be the "controlling criterion" in redistricting to ensure all districts "as nearly equal to each other" in population. Writing for the Court, Chief Justice Earl Warren declared:

    1) *The right of suffrage is denied by debasement or dilution of a citizen's vote in a state or federal election.*
    2) *Under the Equal Protection Clause, a claim of debasement of the right to vote through malapportionment presents a justiciable controversy, and the Equal Protection Clause provides manageable standards for lower courts to determine the constitutionality of a state legislative apportionment scheme.*
    3) *The Equal Protection Clause requires substantially equal legislative representation for all citizens in a State regardless of where they reside.*

    *Undoubtedly,* ***the right of suffrage is a fundamental matter*** *in a free and democratic society. Especially the right to exercise* ***franchise in a free and unimpaired manner*** *is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.*

    ***Weighting the votes*** *of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable.*

    *To the extent that a citizen's right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for* ***overweighting or diluting*** *the efficacy of his vote.*

    *The Equal Protection Clause demands no less than* ***substantially equal*** *state legislative representation for* ***all citizens***, *of* ***all places*** *as well as of* ***all races***.

3. In *Wesberry v. Sanders* (1964), James P. Wesberry resided in a Georgia congressional district with a population two to three times greater than that of other congressional districts in the state. Wesberry asserted that because there was only one congressman for each district, his vote was debased as a result of the state apportionment statute and the state's failure to realign the congressional districts. Wesberry sought to invalidate the apportionment statute and enjoin defendants, the Governor (Carl Sanders) and Secretary of State, from conducting elections under it.

The question presented to the court: *Did Georgia's congressional districts violate the Fourteenth Amendment or deprive citizens of the full benefit of their right to vote?*

The Supreme Court in a 6-to-3 decision (1) overturned the District Court's dismissal for non-justiciability and want of equity, (2) recounted the history of the Great Compromise by our founding fathers who demanded equal representation in the House based on population, (3) reaffirmed the right to vote is the fundamental right protected by the Constitution and judicial review, (4) rejected one vote being worth more in one district than in another district, and (5) insisted mathematical precision cannot be the excuse for ignoring the Constitution's demand for equal representation in the House of Representatives. Writing for the Court, Justice Black declared:

1) *As in Baker v. Carr, which involved alleged malapportionment of seats in a state legislature, the District Court had jurisdiction of the subject matter; **appellants had standing to sue, and they had stated a justiciable cause of action on which relief could be granted**.*
2) *A complaint alleging **debasement of the right to vote as a result of a state congressional apportionment law is not subject to dismissal** for "want of equity" as raising a wholly "political" question.*
3) *The constitutional requirement in Art. I, § 2, that Representatives be chosen "by the People of the several States" means that, as nearly as is practicable, **one person's vote in a congressional election is to be worth as much as another's.***

***No right is more precious** in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.*

*We agree with Judge Tuttle that, in debasing the **weight of appellants' votes**, the State has **abridged** the right to vote for members of Congress guaranteed them by the United States Constitution, that the District Court should have entered **a declaratory judgment** to that effect, and that it was therefore **error to dismiss** this suit.*

***The right to vote is too important** in our free society to be stripped of **judicial protection** by such an interpretation of Article I. This dismissal can no more be justified on the ground of "want of equity" than on the ground of "nonjusticiability." We therefore hold **that the District Court erred in dismissing** the complaint.*

4. In **Bush v. Gore**, *531 U.S. 98 (2000)* the Supreme Court reaffirmed in presidential elections the constitutional principle that equal weight must be accorded to each vote, and equal dignity of each voter must be respected under the Equal Protection Clause:

"*... one source of its fundamental nature lies in the* **equal weight** *accorded to* **each vote** *and the* **equal dignity** *owed to* **each voter**... *It must be remembered that "***the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote*** *just as effectively as by wholly prohibiting the free exercise of the franchise."*

## VI.    THE SECOND CIRCUIT COURT'S OPINION ON LIU v. CONGRESS

1. On Jan. 11, 2019, Plaintiff filed a complaint (SDNY1:19-cv-311-CM) against Congress and the four congressional leaders at the time on the ground that the existing congressional apportionment scheme resulted in significant underrepresentation of residents in NYS (as well as all populous states) in the House of Representatives, hence shall be declared unconstitutional. Under the existing Apportionment laws and the 2010 Census, Wyoming (WY) received one House seat for its population of 563,626, while NYS got 27 House seats for its population of 19,378,561, i.e. 717,707 per House seat. Had NYS received House seats at the same ratio as WY mandated by Article I § 2 Clause 3, NYS should have been entitled 34.4 House seats. Hence, NYS residents had been deprived of at least 7 House seats. In other words, 21.5% (1-27/34.4) of NYS residents had been taxed without representation in the House of Representatives, and NYS voters' vote had been diluted by 21.5% in the House elections. (**Update:** after the latest 2020 Census Apportionment, NYS has been deprived of 9 House seats, which means 25.7% of NYS residents are now taxed without representation in the House and NYS voters' vote are diluted by 25.7% in the House elections; nationwide, 79.8 million (24.1%) Americans are taxed without representation in the House, including California 24.1%, Florida 25.0% and Texas 24.8%. Our Founding Fathers must have been turning in their grave endlessly.)

2. On Sep. 3, 2019, the District Court granted the defendants' motion to dismiss.

3. On Sep. 26, 2019, Plaintiff filed an appeal (CASC#19-3054) to the Court of Appeals for the Second Circuit (hereafter, "the Second Circuit Court").

4. On Dec. 16, 2020, the Second Circuit Court partially overruled the SDNY decision and affirmed that Plaintiff had established injury in fact in its ruling Pages 5 to 9, "*We conclude that Liu plausibly alleged an injury in fact in the form of vote dilution. The Supreme Court has held that a voter alleges an injury in fact sufficient to give rise to Article III standing when he alleges that his vote has been diluted.*" The Second Circuit Court relevant opinion is quoted in its entity in Appendix A with some texts being highlighted in bold for the Court's attention.

# VII.    SUMMARY OF THE ARGUMENTS

**1. WTA Has No Textual Provision in the Constitution**

U.S. Const. Article II, Section 1, Paragraph 2 states "Each State shall appoint, in such Manner as the Legislature thereof may direct…" The key word here is "Manner". According to <u>Merriam-Webster</u> Dictionary, the synonyms and similar words include *etiquette, demeanor, attitude, form, posture, mode, style, protocol, decorum, custom, convention, way, pattern, fashion, practice, poise, kind, type, sort, genre, breed*, and so on. The word "value" is absent in this list because "Manner" does not equate to "Value". If one truly follows the originalism and textualism, one will find no textual provision anywhere in the Constitution that supports the WTA method.

**2. WTA Has No Textual Provision in the State Election Law**

Review of the NYS election law shows the entire Article XII describes the Manner, and there is no provision stating that all electoral votes are assigned only to the candidate who receives the most votes. Again, there is no text anywhere in the NYS election law that defines the WTA method, or clearly states the votes for the non-winning candidates are to be debased to zero value in allocating electoral votes.

**3. WTA Causes Disenfranchisement**

The WTA method allocates all electoral votes only to the candidate who receives the most popular votes in each of the 48 states, and each of the five congressional districts in Maine (2) and Nebraska (3), effectively disenfranchising tens of millions of voters who voted for the other candidates. Under the WTA method, over 70 million or 51.8% of the votes in 2016 and over 77 million or 48.7% of the votes in 2020 were debased to zero as if these millions of votes were thrown into waste or as if these 147 million of voters had never voted. (Exhibit A and Exhibit B)

**4. WTA Causes Taxation without Representation**

The presidency is the only national office that represents all Americans. By debasing hundreds of millions of votes for the second candidates since 1812, the WTA method is tantamounted to taxation without representation in presidential elections. The Court shall recall the root cause of the American revolution.

**5. WTA is Utterly Un-American**

The Declaration of Independence essentially established four founding principles:
1) Equality: *all men are created equal.*
2) Unalienable Rights: *among these are Life, Liberty and the pursuit of Happiness.*
3) Republic: *Governments are instituted among Men.*
4) Democracy: *deriving their just powers from the consent of the governed.*

Every vote represents a voter's dignity and freedom of choice, i.e. Life and Liberty. When a voter's vote is being debasing to zero value, not even worth of the paper it is printed on, he/she is certainly not treated equally, his/her liberty is taken away, he/she is not being represented in the Government (presidency), and his/her consent is completely discarded into waste. The WTA method is utterly un-American because it has grossly contradicted all these four founding

principle.  If these founding principles really hold truth, every vote must be equally counted and equally weighted in every election.

6. **WTA is Utterly Undemocratic**
The WTA method is utterly undemocratic. The presidency is the only national office that represents the entire country and receives its legitimacy and mandate from all voters according to the aforementioned founding principles. Furthermore, the Preamble of the Constitution starts with "*We the People*".

In McCulloch v. Maryland Chief Justice John Marshall declared "*The Government of the Union is emphatically and truly, a Government of the people. In form and in substance, it emanates from them. Its powers are granted by them, and are to be exercised directly on them, and for their benefit*."

7. **WTA Violates the First Amendment Freedom of Speech**
The WTA method has violated the freedom of speech guaranteed by the First Amendment. Every eligible citizen's vote represents his/her most sacred speech and solemn choice in the most important election once every four years in America. Tens of millions of voters' first amendment rights were completely deprived of when their votes are reduced to zero value in determining the presidential elections' outcome.

8. **WTA Violates the Due Process Clause**
The WTA method has violated the Due Process Clause in Amend. XIV which demands "nor shall any State deprive any person of life, liberty, or property, without due process of law." There is neither textual provision in the Constitution nor the State's election law to support the WTA method. The New York State's election law Article XII does not even explain how the electors are allocated.

9. **WTA Violates the Equal Protection Clause**
The WTA method has violated the Equal Protection Clause in Amend. XIV which demands "nor shall any State … nor deny to any person within its jurisdiction the equal protection of the laws." Every voter in the NYS shall be protected by the election law with equal value/weight in determining the allocation of the NYS electoral votes.

10. **WTA Violates the Right to Vote Clause**
Amend. XIV demands "the right to vote at any election for **the choice of electors for President and Vice-President of the United States** … shall not be denied or infringed." The WTA method has clearly denied or infringed the Right to Vote Clause by reducing tens of millions of votes to zero value. Every voter shall have equal value/weight in determining the allocation of the electoral votes in presidential elections.

11. **WTA Violates the "One Person One Vote" Principle Affirmed by the Supreme Court**
The Right to Vote is the quintessence of being a free person with unalienable rights to Life, Liberty and the pursuit of Happiness according to the Declaration of Independence. On March 15, 1965, President Lyndon B. Johnson addressed a joint session of Congress to urge the passage of legislation guaranteeing voting rights for all. Using the phrase "we shall overcome,"

borrowed from African American leaders struggling for equal rights, Johnson declares that "every American citizen must have <u>an equal right to vote</u>."

The four landmark cases decided by the Supreme Court repeatedly affirmed the constitutional principle of "One Person One Vote." Declaring equal weight and equal dignity for every vote in presidential elections, the ***Bush v. Gore*** decision was especially relevant to this case.

**12. WTA Has Suppressed Voter Participation**

Voter turnout in the United States has long been low compared to other developed countries. According to <u>the Council on Foreign Relations' report dated August 24, 2022,</u> turnout in the United States is below average among members of the Organization for Economic Cooperation and Development (OECD), a grouping of mostly high-income countries. Turnout in the 2020 U.S. national elections was 62 percent, three points below the OECD average of 65 percent. According to <u>Statista.com,</u> the voter turnout in the presidential elections in France between 1965 and 2022 ranged between 69% to 87%.

Among all developed democracy, the United States is the only country that employs such highly voter suppressing method in presidential elections. Thanks to the WTA, Democratic voters in solid red states and Republic voters in solid blue states know very well that their votes will end up being debasing to zero value, resulting in widespread voter apathy, i.e. feeling voiceless in the most important and the only national election in America. Effectively, the WTA has told these voters that their votes are worthless, and it is simply a waste of time and effort to go to the polling stations and vote.

13. In summary, the WTA method has no textual provision anywhere in the Constitution or in the NYS election law. Since 1824 the WTA method has disenfranchised hundreds of millions of voters by debasing their votes to zero value, making their right to vote worthless and meaningless. The WTA method has not only violated multiple constitutional principles and provisions, but also betrayed all four founding principles enshrined in the Declaration of Independence. Therefore, the WTA method is utterly un-American, undemocratic, unjust and unconstitutional. For the right to vote to be truly meaningful and our democracy to be truly legitimate, fair and just, every vote must be not only counted and but also weighted equally in allocating the electoral votes in every state or congressional district in Maine and Nebraska. The office of the presidency is the only office that represents all people in the country. Therefore, no single vote should be debased to zero value in the most important and the only national elections in our country.

## VIII.    PLAINTIFF HAS THE STANDING

1. The aforementioned four landmark cases by the Supreme Court repeatedly affirmed (1) the constitutional principle of "one person one vote" and every vote must be treated with equal dignity and equal weight in determining the final outcome of all elections including presidential elections; (2) infringement of voting right by the states violates the Equal Protection clause in the Fourteenth Amendment; (3) the plaintiffs whose right to vote was debased have the standing to sue, and (4) such violation of fundamental right is well within the Court's judicial review.

2. In particular, the Second Circuit Court also affirmed this Plaintiff established injury-in-fact in the Case (SDNY#19-cv-00311 & CASC#19-3054) for his vote has been significantly diluted in the electing House of Representatives as a result of the existing congressional reapportionment scheme.

3. The NYS has always voted for the Democratic candidates since 1984. Therefore, in the upcoming 2024 Election, as a registered Republican voter, Plaintiff's vote will almost certainly be discarded, rendered to be worthless in determining the election's final result.

4. **Injury in Fact**: when a voter's vote is properly cast and counted, then is debased to zero value as if it were discarded in a trash can, this constitutes the worst form of Injury in Fact for a voter.

5. **Causation**: by adopting the WTA method, the NYS and the other 47 states have effectively disenfranchised hundreds of millions of votes into trash since the 1824 Elections. The WTA method is the direct cause of such gross violation of voting rights.

6. **Redressability**: Plaintiff is seeking the same redress from the Court as the plaintiffs in *Baker, Reynolds* and *Wesberry*, and has proposed a simple and no-extra cost solution to the WTA problem in the next section.

7. This case on hand resembles the aforementioned five cases in terms of dilution / debasement of vote value by a state-sanctioned scheme in the presidential electoral process, and Plaintiff has presented statement of facts and arguments to meet the three elements of standing to sue.

## IX.    PROPOSED REMEDY- THE EQUAL PROPORTIONAL METHOD

The proposed remedy includes two simple and straightforward steps.

1. First, the Court shall declare the WTA method unconstitutional and enjoin all states and District of Columbia (D.C.) from continuing such method in all future presidential elections, starting with the 2024 Election.

2. Secondly, it is up to all states and D.C. to adopt a new method to allocate their electoral votes. The simple straightforward solution is in fact already defined in the Constitution: equal proportional representation for the House of Representatives. Following the same constitutional principle, each of the 50 states and D.C. shall allocate its electoral votes to the top two presidential candidates based on the percentage of popular votes each candidate receives respectively.

3. For example, the equal proportional method would have worked in the 2020 Election as follows for the NYS by solving two linear equations of two variables:

   a. Biden received 60.87% of the popular votes, hence X electoral votes (EV), Trump received 37.74% of the popular votes, hence Y EVs:
   b. Equation #1: $X + Y = 29$ electoral votes => $Y = 29 - X$.
   c. Equation #2: $X / Y = 60.87\% / 37.74\%$ => $X / (29-X) = 60.87\% / 37.74\%$.
   d. Solve $X = 17.90$, hence Biden shall receive 17 full EVs, and one partial EV of 0.9.
   e. Solve $Y = 11.10$, hence Trump shall receive 11 full EVs, and one partial EV of 0.1.
   f. This means, the NYS would have 17 Democratic electors for Biden, 11 Republican electors for Trump, and one non-partisan elector who would cast 0.9 EV for Biden and 0.1 EV for Trump, adding to still a total of 29 electoral votes.
   g. Repeat the same calculation and allocation for the other 49 states and D.C.
   h. Biden would have received a total of 281.2 EVs, Trump 256.8 EVs, adding to a total of 538 EVs. (Appendix D)

4. The above proportional method employs simple arithmetic, imposes no extra costs, and most importantly counts and weights every vote transparently and fairly, thereby resulting in the rightful and legitimate president-elect who is truly chosen by "*We the People*" with indisputable "*The Consent of the Governed*".

5. The proposed equal proportional method will be easily understood by the general public and news media. It can be implemented immediately and easily without any additional administrative burden on the Defendants.

6. Under the equal proportional method, every voter knows his/her vote will have equal weight in determining the final outcome of all future presidential elections. Therefore, every voter in all 50 states and D.C., whether blue or red, will have a much stronger sense of citizenry duty to participate in the most important and only national elections in the country.

## X.    <u>CONCLUSION</u>

1. America has long proudly called itself a democracy. However, the indisputable fact is that since 1824 hundreds of millions of votes have been brazenly debased to worthless and meaningless in every presidential election. In a true democracy, every vote must be counted and weighted equally towards every presidential election's final outcome, no vote may be debased to zero value in the electoral process. It is long overdue to make EVERY VOTE COUNTED and WEIGHTED EQUALLY in the presidential elections' results according to the Fourteenth Amendment and other constitutional provisions and America's founding principles. **Abolishing the WTA immediately is not only the right thing to do, but also required by the Declaration of Independence and demanded by the United States Constitution.**

2. The two questions at hand for the Court and all Americans are: (1) Do the words in **the Declaration of Independence**, the texts in **the Constitution**, and President Lincoln's declaration of "***Government of the people, by the people, for the people***" still mean anything at all? (2) Whether we can look into the mirror and honestly call ourselves a true democracy?

3. Time is of the essence in this case. Plaintiff respectfully appeals to the Court to urgently  (1) issue a declaratory judgment that the WTA method is unconstitutional, and (2) enjoin the named Defendants from allocating electoral votes under the WTA.

4. The Defendants are responsible for conducting presidential elections and allocating the electoral votes. It is their constitutional duties and obligations to ensure all voters' votes counted and weighted equally in allocating electoral votes. Should Defendants choose not to do the right thing, the Court shall recall what Justice Kennedy declared in ***Obergefell v. Hodges***, 576 U.S. 644 (2015):

> *When the rights of persons are violated, **the Constitution requires redress by the courts** … and individual can invoke a right to constitutional protection when he or she is harmed … even if the legislature refuses to act.*

Date: July 9, 2024

Respectfully submitted,

*Yuxi Liu*

_____
Yu-Xi (Glen) Liu, Esq. (yl3022)
Attorney for Plaintiff
53 Elizabeth St, 2C
New York, NY 10013
212.597.2888 | Glen@Dawnlaw.us

**Appendix A**

**THE SECOND CIRCUIT COURT'S OPINION ON LIU v. CONGRESS (CASC19-3054)**

On Dec. 16, 2020, the Second Circuit Court ruled that Plaintiff in SDNY#1:19-cv-00311 and CASC#19-3054 had established injury in fact in its ruling Pages 5 to 9. The relevant opinion is quoted in its entity as follows with some texts being highlighted in bold for the Court's attention.

> To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. **We conclude that Liu plausibly alleged an injury in fact in the form of vote dilution**. **The Supreme Court has held that a voter alleges an injury in fact sufficient to give rise to Article III standing when he alleges that his vote has been diluted** because he has been improperly placed in a legislative district the population of which is substantially greater than that of other districts. See *Baker v. Carr*, 369 U.S. 186, 206-07 (1962) (holding that the plaintiffs had standing to challenge Tennessee's apportionment of state representatives when that apportionment "effect[ed] a gross disproportion of representation to voting population"). *In Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999), the Court considered a challenge to the constitutionality of the Department of Commerce's proposed use of statistical sampling in the decennial census. An Indiana resident argued that he suffered an injury in fact because the Department of Commerce's use of statistical sampling would result in a substantial undercount in Indiana, such that Indiana would lose a member of its congressional delegation. **Concluding that the Indiana plaintiff had standing, the Court explained**:

> > Appellee Hofmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. **In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because they are asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes**. The same distinct interest is at issue here: With one fewer Representative, Indiana residents' votes will be diluted.

> *Id*. at 331-32 (internal citation, quotation marks, and alteration omitted). While this case does not concern the loss of a representative, the alleged injury of vote dilution is the same. When a state loses a representative, it must redraw its districts such that the remaining legislative districts absorb relatively equal proportions of the population of the former representative's district. See *Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016). **A voter thereby suffers an injury because the efficacy of his or her vote is diluted when it is introduced into a larger voting pool**. See *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. at 334 ("[E]xpected intrastate vote dilution satisfies the injury-in-fact ... requirement."); *Dep't of Commerce v. Montana*, 503 U.S. 442, 445, 459 (1992) (noting that a challenge to "the standard that governs the apportionment of Representatives among the several States" is

"unquestionably within our jurisdiction"); *Baker*, 369 U.S. at 208 (**concluding that plaintiffs alleging "impairment of their votes by the 1901 apportionment …. have standing**" because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' not merely a claim of 'the right possessed by every citizen '**to require that the government be administered according to law**'") (internal citation omitted); *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964) (entertaining a claim of "vote-diluting discrimination"); *Reynolds v. Sims*, 377 U.S. 533, 568 (1964) (**considering a claim that "an individual's right to vote … is in a substantial fashion diluted**"); *WMCA, Inc v. Lorenzo*, 377 U.S. 633, 653 (1964) (reviewing "an apportionment scheme" that allegedly "**result[s] in a significant undervaluation of the weight of the votes of certain of a State's citizens**").

In this case, Liu's complaint alleges that New York and forty-seven other states—those states aside from Wyoming and Rhode Island—are unconstitutionally deprived of additional representatives that the states would receive under a proper apportionment scheme. Accordingly, **his complaint in part alleges that he and his fellow New Yorkers suffer vote dilution because they must vote in electoral districts with populations larger than they constitutionally should**. That is the same injury alleged in *Dep't of Commerce v. U.S. House of Representatives*, which **the Supreme Court said is an injury in fact under Article III**.
To the extent Liu alleges injury based on vote dilution suffered by residents of other states, he "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The defendants argue that Liu has failed to allege an injury in fact because the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government ... does not state an Article III case or controversy." *Lujan*, 504 U.S. at 574. **They suggest that Liu's asserted injury is an abstract, generally available grievance unsuitable for resolution in a federal court.**
**We disagree**. **In this case, we are concerned with a right—the right to have one's vote count equally**—that the Supreme Court has characterized as concrete, "individual[,] and personal in nature." *Reynolds*, 377 U.S. at 561. **The Court has explained that, "[w]here a harm is concrete, though widely shared," that harm is cognizable** under Article III. *FEC v. Akins*, 524 U.S. 11, 24 (1998). "The kind of judicial language to which" the defendants refer "invariably appears in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature—for example, harm to the 'common concern for obedience to law.'" Id. at 23. In such cases, it is "[t]he abstract nature of the harm"—not the number of persons who share the harm—that "deprives the case of the concrete specificity" required by the Constitution. Id. at 24; see also *Lujan*, 504 U.S. at 573 (rejecting the view that "the injury-in-fact requirement had been satisfied by congressional conferral upon all persons of an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law"); *Schlesinger v. Reservists Comm*. to Stop the War, 418 U.S. 208, 217 (1974) (dismissing for lack of standing a case in which the "Respondents [sought] to have the Judicial Branch compel the Executive Branch to act in conformity with the

Incompatibility Clause, an interest shared by all citizens"); *Crist v. Comm'n* on Presidential Debates, 262 F.3d 193, 194 (2d Cir. 2001)(dismissing for lack of standing a voter's suit challenging the Commission's practice of "limiting participation ... to candidates who have demonstrated a particular measure of popularity"). **Because the Supreme Court's cases have consistently held vote dilution to be an injury in fact, we conclude that Liu plausibly alleged the first element of standing.**

**Appendix B**

Source: https://en.wikipedia.org/wiki/2020_United_States_presidential_election

## 2020 Election Results by State - Electoral Votes Allocated by the Winner-Take-All Method

| State or District | Biden/Harris Democratic | | | Trump/Pence Republican | | | Jorgensen/Cohen Libertarian | | | Hawkins/Walker Green | | | Others | | | Winning Margin | | Margin Swing | Total Votes | Votes Discarded | Votes Discarded % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Votes | % | EV | Votes | % | EV | Votes | % | EV | Votes | % | EV | Votes | % | EV | Votes | % | % | | | |
| Alabama | 849,624 | 36.57% | | 1,441,170 | 62.03% | 9 | 25,176 | 1.08% | – | [o] | | | 7,312 | 0.31% | – | -591,546 | -25.46% | 2.27% | 2,323,282 | 882,112 | 38.0% |
| Alaska | 153,778 | 42.77% | | 189,951 | 52.83% | 3 | 8,897 | 2.47% | – | [o] | | | 6,904 | 1.92% | – | -36,173 | -10.06% | 4.67% | 359,530 | 169,579 | 47.2% |
| Arizona* | 1,672,143 | 49.36% | 11 | 1,661,686 | 49.06% | – | 51,465 | 1.52% | – | 1,557 | 0.05% | – | 475 | 0.01% | – | 10,457 | 0.31% | 3.81% | 3,387,326 | 1,715,183 | 50.6% |
| Arkansas | 423,932 | 34.78% | | 760,647 | 62.40% | 6 | 13,133 | 1.08% | – | 2,980 | 0.24% | | 18,377 | 1.51% | – | -336,715 | -27.62% | -0.70% | 1,219,069 | 458,422 | 37.6% |
| California | 11,110,639 | 63.48% | 55 | 6,006,518 | 34.32% | – | 187,910 | 1.07% | – | 81,032 | 0.46% | – | 115,281 | 0.66% | – | 5,104,121 | 29.16% | -0.95% | 17,501,380 | 6,390,741 | 36.5% |
| Colorado | 1,804,352 | 55.40% | 9 | 1,364,607 | 41.90% | – | 52,460 | 1.61% | – | 8,986 | 0.28% | – | 26,575 | 0.82% | – | 439,745 | 13.50% | 8.59% | 3,256,980 | 1,452,628 | 44.6% |
| Connecticut | 1,080,831 | 59.26% | 7 | 714,717 | 39.19% | – | 20,230 | 1.11% | – | 7,538 | 0.41% | – | 541 | 0.03% | – | 366,114 | 20.07% | 6.43% | 1,823,857 | 743,026 | 40.7% |
| Delaware | 296,268 | 58.74% | 3 | 200,603 | 39.77% | – | 5,000 | 0.99% | – | 2,139 | 0.42% | – | 336 | 0.07% | – | 95,665 | 18.97% | 7.60% | 504,346 | 208,078 | 41.3% |
| D.C. | 317,323 | 92.15% | 3 | 18,586 | 5.40% | – | 2,036 | 0.59% | – | 1,726 | 0.50% | – | 4,685 | 1.36% | – | 298,737 | 86.75% | -0.02% | 344,356 | 27,033 | 7.9% |
| Florida | 5,297,045 | 47.86% | | 5,668,731 | 51.22% | 29 | 70,324 | 0.64% | – | 14,721 | 0.13% | – | 16,635 | 0.15% | – | -371,686 | -3.36% | -2.16% | 11,067,456 | 5,398,725 | 48.8% |
| Georgia | 2,473,633 | 49.47% | 16 | 2,461,854 | 49.24% | – | 62,229 | 1.24% | – | 1,013 | 0.02% | – | 1,231 | 0.02% | – | 11,779 | 0.24% | 5.37% | 4,999,960 | 2,526,327 | 50.5% |
| Hawaii | 366,130 | 63.73% | 4 | 196,864 | 34.27% | – | 5,539 | 0.96% | – | 3,822 | 0.67% | – | 2,114 | 0.37% | – | 169,266 | 29.46% | -2.72% | 574,469 | 208,339 | 36.3% |
| Idaho | 287,021 | 33.07% | | 554,119 | 63.84% | 4 | 16,404 | 1.89% | – | 407 | 0.05% | – | 9,983 | 1.15% | – | -267,098 | -30.77% | 1.00% | 867,934 | 313,815 | 36.2% |
| Illinois | 3,471,915 | 57.54% | 20 | 2,446,891 | 40.55% | – | 66,544 | 1.10% | – | 30,494 | 0.51% | – | 17,900 | 0.30% | – | 1,025,024 | 16.99% | -0.08% | 6,033,744 | 2,561,829 | 42.5% |
| Indiana | 1,242,498 | 40.96% | | 1,729,857 | 57.03% | 11 | 58,901 | 1.94% | – | 989 | 0.03% | – | 965 | 0.03% | – | -487,359 | -16.07% | 3.10% | 3,033,210 | 1,303,353 | 43.0% |
| Iowa | 759,061 | 44.89% | | 897,672 | 53.09% | 6 | 19,637 | 1.16% | – | 3,075 | 0.18% | – | 11,426 | 0.68% | – | -138,611 | -8.20% | 1.21% | 1,690,871 | 793,199 | 46.9% |
| Kansas | 570,323 | 41.51% | | 771,406 | 56.14% | 6 | 30,574 | 2.23% | – | 669 | 0.05% | – | 1,014 | 0.07% | – | -201,083 | -14.64% | 5.98% | 1,373,986 | 602,580 | 43.9% |
| Kentucky | 772,474 | 36.15% | | 1,326,646 | 62.09% | 8 | 26,234 | 1.23% | – | 716 | 0.03% | – | 10,698 | 0.50% | – | -554,172 | -25.94% | 3.90% | 2,136,768 | 810,122 | 37.9% |
| Louisiana | 856,034 | 39.85% | | 1,255,776 | 58.46% | 8 | 21,645 | 1.01% | – | | | – | 14,607 | 0.68% | – | -399,742 | -18.61% | 1.03% | 2,148,062 | 892,286 | 41.5% |
| Maine† | 435,072 | 53.09% | 2 | 360,737 | 44.02% | – | 14,152 | 1.73% | – | 8,230 | 1.00% | – | 1,270 | 0.15% | – | 74,335 | 9.07% | 6.11% | 819,461 | 384,389 | 46.9% |
| Maine-1 | 266,376 | 60.11% | 1 | 164,045 | 37.02% | – | 7,343 | 1.66% | – | 4,654 | 1.05% | – | 694 | 0.16% | – | 102,331 | 23.09% | 8.28% | 443,112 | 176,736 | 39.9% |
| Maine-2 | 168,696 | 44.82% | – | 196,692 | 52.26% | 1 | 6,809 | 1.81% | – | 3,576 | 0.95% | – | 576 | 0.15% | – | -27,996 | -7.44% | 2.85% | 376,349 | 179,657 | 47.7% |
| Maryland | 1,985,023 | 65.36% | 10 | 976,414 | 32.15% | – | 33,488 | 1.10% | – | 15,799 | 0.52% | – | 26,306 | 0.87% | – | 1,008,609 | 33.21% | 6.79% | 3,037,030 | 1,052,007 | 34.6% |
| Massachusetts | 2,382,202 | 65.60% | 11 | 1,167,202 | 32.14% | – | 47,013 | 1.29% | – | 18,658 | 0.51% | – | 16,327 | 0.45% | – | 1,215,000 | 33.46% | 6.26% | 3,631,402 | 1,249,200 | 34.4% |
| Michigan | 2,804,040 | 50.62% | 16 | 2,649,852 | 47.84% | – | 60,381 | 1.09% | – | 13,718 | 0.25% | – | 11,311 | 0.20% | – | 154,188 | 2.78% | 3.01% | 5,539,302 | 2,735,262 | 49.4% |
| Minnesota | 1,717,077 | 52.40% | 10 | 1,484,065 | 45.28% | – | 34,976 | 1.07% | – | 10,033 | 0.31% | – | 31,020 | 0.95% | – | 233,012 | 7.11% | 5.59% | 3,277,171 | 1,560,094 | 47.6% |
| Mississippi | 539,398 | 41.06% | | 756,764 | 57.60% | 6 | 8,026 | 0.61% | – | 1,498 | 0.11% | – | 8,073 | 0.61% | – | -217,366 | -16.55% | 1.28% | 1,313,759 | 556,995 | 42.4% |
| Missouri | 1,253,014 | 41.41% | | 1,718,736 | 56.80% | 10 | 41,205 | 1.36% | – | 8,283 | 0.27% | – | 4,724 | 0.16% | – | -465,722 | -15.39% | 3.25% | 3,025,962 | 1,307,226 | 43.2% |
| Montana | 244,786 | 40.55% | | 343,602 | 56.92% | 3 | 15,252 | 2.53% | – | | | – | 34 | 0.01% | – | -98,816 | -16.37% | 4.05% | 603,674 | 260,072 | 43.1% |
| Nebraska‡ | 374,583 | 39.17% | | 556,846 | 58.22% | 2 | 20,283 | 2.12% | – | [o] | | [o] | 4,671 | 0.49% | – | -182,263 | -19.06% | 5.99% | 956,383 | 399,537 | 41.8% |
| Nebraska-1 | 132,261 | 41.09% | – | 180,290 | 56.01% | 1 | 7,496 | 2.33% | – | [o] | | [o] | 1,840 | 0.57% | – | -48,029 | -14.92% | 5.80% | 321,886 | 141,596 | 44.0% |
| Nebraska-2 | 176,468 | 51.95% | 1 | 154,377 | 45.45% | – | 6,909 | 2.03% | – | [o] | [o] | – | 1,912 | 0.56% | – | 22,091 | 6.50% | 8.74% | 339,666 | 163,198 | 48.0% |
| Nevada | 703,486 | 50.06% | 6 | 669,890 | 47.67% | – | 14,783 | 1.05% | – | | | – | 17,217 | 1.23% | – | 33,596 | 2.39% | -0.03% | 1,405,376 | 701,890 | 49.9% |
| New Hampshire | 424,937 | 52.71% | 4 | 365,660 | 45.36% | – | 13,236 | 1.64% | – | 217 | 0.03% | – | 2,155 | 0.27% | – | 59,277 | 7.35% | 6.98% | 806,205 | 381,268 | 47.3% |
| New Jersey | 2,608,400 | 57.33% | 14 | 1,883,313 | 41.40% | – | 31,677 | 0.70% | – | 14,202 | 0.31% | – | 11,865 | 0.26% | – | 725,087 | 15.94% | 1.84% | 4,549,457 | 1,941,057 | 42.7% |
| New Mexico | 501,614 | 54.29% | 5 | 401,894 | 43.50% | – | 12,585 | 1.36% | – | 4,426 | 0.48% | – | 3,446 | 0.37% | – | 99,720 | 10.79% | 2.58% | 923,965 | 422,351 | 45.7% |
| New York | 5,244,886 | 60.87% | 29 | 3,251,997 | 37.74% | – | 60,383 | 0.70% | – | 32,832 | 0.38% | – | 26,763 | 0.31% | – | 1,992,889 | 23.13% | 0.64% | 8,616,861 | 3,371,975 | 39.1% |
| North Carolina | 2,684,292 | 48.59% | | 2,758,775 | 49.93% | 15 | 48,678 | 0.88% | – | 12,195 | 0.22% | – | 20,864 | 0.38% | – | -74,483 | -1.35% | 2.31% | 5,524,804 | 2,766,029 | 50.1% |
| North Dakota | 115,042 | 31.78% | | 235,751 | 65.12% | 3 | 9,371 | 2.59% | – | [o] | | – | 1,860 | 0.51% | – | -120,709 | -33.34% | 2.39% | 362,024 | 126,273 | 34.9% |
| Ohio | 2,679,165 | 45.24% | | 3,154,834 | 53.27% | 18 | 67,569 | 1.14% | – | 18,812 | 0.32% | – | 1,822 | 0.03% | – | -475,669 | -8.03% | 0.10% | 5,922,202 | 2,767,368 | 46.7% |
| Oklahoma | 503,890 | 32.29% | | 1,020,280 | 65.37% | 7 | 24,731 | 1.58% | – | | | – | 11,798 | 0.76% | – | -516,390 | -33.09% | 3.99% | 1,560,699 | 540,419 | 34.6% |
| Oregon | 1,340,383 | 56.45% | 7 | 958,448 | 40.37% | – | 41,582 | 1.75% | – | 11,831 | 0.50% | – | 22,077 | 0.93% | – | 381,935 | 16.08% | 5.10% | 2,374,321 | 1,033,938 | 43.5% |
| Pennsylvania | 3,458,229 | 50.02% | 20 | 3,377,674 | 48.89% | – | 79,380 | 1.14% | – | 1,282 | 0.02% | – | 20,411 | 0.29% | – | 80,555 | 1.16% | 1.88% | 6,936,976 | 3,478,747 | 50.1% |
| Rhode Island | 307,486 | 59.39% | 4 | 199,922 | 38.61% | – | 5,053 | 0.98% | – | [o] | | – | 5,296 | 1.02% | – | 107,564 | 20.77% | 5.26% | 517,757 | 210,271 | 40.6% |
| South Carolina | 1,091,541 | 43.43% | | 1,385,103 | 55.11% | 9 | 27,916 | 1.11% | – | 6,907 | 0.27% | – | 1,882 | 0.07% | – | -293,562 | -11.68% | 2.59% | 2,513,329 | 1,128,226 | 44.9% |
| South Dakota | 150,471 | 35.61% | | 261,043 | 61.77% | 3 | 11,095 | 2.63% | – | | | – | | | – | -110,572 | -26.16% | 3.63% | 422,609 | 161,566 | 38.2% |
| Tennessee | 1,143,711 | 37.45% | | 1,852,475 | 60.66% | 11 | 29,877 | 0.98% | – | 4,545 | 0.15% | – | 23,243 | 0.76% | – | -708,764 | -23.21% | 2.80% | 3,053,851 | 1,201,376 | 39.3% |
| Texas | 5,259,126 | 46.48% | | 5,890,347 | 52.06% | 38 | 126,243 | 1.12% | – | 33,396 | 0.30% | – | 5,944 | 0.05% | – | -631,221 | -5.58% | 3.41% | 11,315,056 | 5,424,709 | 47.9% |
| Utah | 560,282 | 37.65% | | 865,140 | 58.13% | 6 | 38,447 | 2.58% | – | 5,053 | 0.34% | – | 19,367 | 1.30% | – | -304,858 | -20.48% | -2.40% | 1,488,289 | 623,149 | 41.9% |
| Vermont | 242,820 | 66.09% | 3 | 112,704 | 30.67% | – | 3,608 | 0.98% | – | 1,310 | 0.36% | – | 6,986 | 1.90% | – | 130,116 | 35.41% | 9.00% | 367,428 | 124,608 | 33.9% |
| Virginia | 2,413,568 | 54.11% | 13 | 1,962,430 | 44.00% | – | 64,761 | 1.45% | – | [o] | | – | 19,765 | 0.44% | – | 451,138 | 10.11% | 4.79% | 4,460,524 | 2,046,956 | 45.9% |
| Washington | 2,369,612 | 57.97% | 12 | 1,584,651 | 38.77% | – | 80,500 | 1.97% | – | 18,289 | 0.45% | – | 34,579 | 0.85% | – | 784,961 | 19.20% | 3.49% | 4,087,631 | 1,718,019 | 42.0% |
| West Virginia | 235,984 | 29.69% | | 545,382 | 68.62% | 5 | 10,687 | 1.34% | – | 2,599 | 0.33% | – | 79 | 0.01% | – | -309,398 | -38.93% | 3.14% | 794,731 | 249,349 | 31.4% |
| Wisconsin | 1,630,866 | 49.45% | 10 | 1,610,184 | 48.82% | – | 38,491 | 1.17% | – | 1,089 | 0.03% | – | 17,411 | 0.53% | – | 20,682 | 0.63% | 1.40% | 3,298,041 | 1,667,175 | 50.6% |
| Wyoming | 73,491 | 26.55% | | 193,559 | 69.94% | 3 | 5,768 | 2.08% | – | [o] | | [o] | 3,947 | 1.43% | – | -120,068 | -43.38% | 2.92% | 276,765 | 83,206 | 30.1% |
| Total | 81,283,501 | 51.31% | 306 | 74,223,975 | 46.85% | 232 | 1,865,535 | 1.18% | – | 407,068 | 0.26% | – | 649,552 | 0.41% | – | 7,059,526 | 4.46% | 2.36% | 158,429,631 | 77,146,130 | 48.7% |
| | Biden/Harris | | | Trump/Pence | | | Jorgensen/Cohen | | | Hawkins/Walker | | | Others | | | Margin | | Margin Swing | Total | Votes Discarded | Votes Discarded % |

**Appendix C**

Source:  https://en.wikipedia.org/wiki/2016_United_States_presidential_election

## 2016 Election Results by State - Electoral Votes Allocated by the Winner-Take-All Method

| State or District | Hillary Clinton Democratic Votes | % | EV | Donald Trump Republican Votes | % | EV | Gary Johnson Libertarian Votes | % | EV | Jill Stein Green Votes | % | EV | Evan McMullin Independent Votes | % | EV | Others Votes | % | EV | Margin Votes | % | Total Votes | Votes Discarded | Votes Discarded % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 729,547 | 34.36% | – | 1,318,255 | 62.08% | 9 | 44,467 | 2.09% | – | 9,391 | 0.44% | – | – | – | – | 21,712 | 1.02% | – | 588,708 | 27.73% | 2,123,372 | 805,117 | 37.9% |
| Alaska | 116,454 | 36.55% | – | 163,387 | 51.28% | 3 | 18,725 | 5.88% | – | 5,735 | 1.80% | – | – | – | – | 14,307 | 4.49% | – | 46,933 | 14.73% | 318,608 | 155,221 | 48.7% |
| Arizona* | 1,161,167 | 44.58% | – | 1,252,401 | 48.08% | 11 | 106,327 | 4.08% | – | 34,345 | 1.32% | – | 17,449 | 0.67% | – | 32,968 | 1.27% | – | 91,234 | 3.50% | 2,604,657 | 1,352,256 | 51.9% |
| Arkansas | 380,494 | 33.65% | – | 684,872 | 60.57% | 6 | 29,949 | 2.64% | – | 9,473 | 0.84% | – | 13,176 | 1.17% | – | 12,712 | 1.12% | – | 304,378 | 26.92% | 1,130,676 | 445,804 | 39.4% |
| California | 8,753,788 | 61.73% | 55 | 4,483,810 | 31.62% | – | 478,500 | 3.37% | – | 278,657 | 1.96% | – | 39,596 | 0.28% | – | 147,244 | 1.04% | – | -4,269,978 | -30.11% | 14,181,595 | 5,427,807 | 38.3% |
| Colorado | 1,338,870 | 48.16% | 9 | 1,202,484 | 43.25% | – | 144,121 | 5.18% | – | 38,437 | 1.38% | – | 28,917 | 1.04% | – | 27,418 | 0.99% | – | -136,386 | -4.91% | 2,780,247 | 1,441,377 | 51.8% |
| Connecticut | 897,572 | 54.57% | 7 | 673,215 | 40.93% | – | 48,676 | 2.96% | – | 22,841 | 1.39% | – | 2,108 | 0.13% | – | 508 | 0.03% | – | -224,357 | -13.64% | 1,644,920 | 747,348 | 45.4% |
| Delaware | 235,603 | 53.09% | 3 | 185,127 | 41.72% | – | 14,757 | 3.32% | – | 6,103 | 1.37% | – | 706 | 0.16% | – | 1,518 | 0.34% | – | -50,476 | -11.37% | 443,814 | 208,211 | 46.9% |
| D.C. | 282,830 | 90.86% | 3 | 12,723 | 4.09% | – | 4,906 | 1.57% | – | 4,258 | 1.36% | – | – | – | – | 6,551 | 2.52% | – | -270,107 | -86.77% | 311,268 | 28,438 | 9.1% |
| Florida | 4,504,975 | 47.82% | – | 4,617,886 | 49.02% | 29 | 207,043 | 2.20% | – | 64,399 | 0.68% | – | – | – | – | 25,736 | 0.28% | – | 112,911 | 1.20% | 9,420,039 | 4,802,153 | 51.0% |
| Georgia | 1,877,963 | 45.64% | – | 2,089,104 | 50.77% | 16 | 125,306 | 3.05% | – | 7,674 | 0.19% | – | 13,017 | 0.32% | – | 4,008 | 0.10% | – | 211,141 | 5.13% | 4,114,732 | 2,025,628 | 49.2% |
| Hawaii | 266,891 | 62.22% | 4 | 128,847 | 30.03% | – | 15,954 | 3.72% | – | 12,737 | 2.97% | – | – | – | – | 4,508 | 1.05% | – | -138,044 | -32.18% | 428,937 | 162,046 | 37.8% |
| Idaho | 189,765 | 27.49% | – | 409,055 | 59.26% | 4 | 28,331 | 4.10% | – | 8,496 | 1.23% | – | 46,476 | 6.73% | – | 8,132 | 1.18% | – | 219,290 | 31.77% | 690,255 | 281,200 | 40.7% |
| Illinois | 3,090,729 | 55.83% | 20 | 2,146,015 | 38.76% | – | 209,596 | 3.79% | – | 76,802 | 1.39% | – | 11,655 | 0.21% | – | 1,627 | 0.03% | – | -944,714 | -17.06% | 5,536,424 | 2,445,695 | 44.2% |
| Indiana | 1,033,126 | 37.91% | – | 1,557,286 | 56.82% | 11 | 133,993 | 4.89% | – | 7,841 | 0.27% | – | – | – | – | 2,712 | 0.10% | – | 524,160 | 19.17% | 2,734,958 | 1,177,672 | 43.1% |
| Iowa | 653,669 | 41.74% | – | 800,983 | 51.15% | 6 | 59,186 | 3.78% | – | 11,479 | 0.73% | – | 12,366 | 0.79% | – | 28,348 | 1.81% | – | 147,314 | 9.41% | 1,566,031 | 765,048 | 48.9% |
| Kansas | 427,005 | 36.05% | – | 671,018 | 56.65% | 6 | 55,406 | 4.68% | – | 23,506 | 1.98% | – | 6,520 | 0.55% | – | 947 | 0.08% | – | 244,013 | 20.60% | 1,184,402 | 513,384 | 43.3% |
| Kentucky | 628,854 | 32.68% | – | 1,202,971 | 62.52% | 8 | 53,752 | 2.79% | – | 13,913 | 0.72% | – | 22,780 | 1.18% | – | 1,879 | 0.10% | – | 574,177 | 29.84% | 1,924,149 | 721,178 | 37.5% |
| Louisiana | 780,154 | 38.45% | – | 1,178,638 | 58.09% | 8 | 37,978 | 1.87% | – | 14,031 | 0.69% | – | 8,547 | 0.42% | – | 9,684 | 0.48% | – | 398,484 | 19.64% | 2,029,032 | 850,394 | 41.9% |
| Maine† | 357,735 | 47.83% | 2 | 335,593 | 44.87% | – | 38,105 | 5.09% | – | 14,251 | 1.91% | – | 1,887 | 0.25% | – | 356 | 0.05% | – | -22,142 | -2.96% | 747,927 | 390,192 | 52.2% |
| Maine-1 | 212,774 | 53.96% | 1 | 154,384 | 39.15% | – | 18,592 | 4.71% | – | 7,563 | 1.92% | – | 807 | 0.20% | – | 209 | 0.05% | – | -58,390 | -14.81% | 394,329 | 181,555 | 46.0% |
| Maine-2 | 144,817 | 40.98% | – | 181,177 | 51.26% | 1 | 19,510 | 5.52% | – | 6,685 | 1.89% | – | 1,080 | 0.31% | – | 147 | 0.04% | – | 36,360 | 10.29% | 353,416 | 172,239 | 48.7% |
| Maryland | 1,677,928 | 60.33% | 10 | 943,169 | 33.91% | – | 79,605 | 2.86% | – | 35,945 | 1.29% | – | 9,630 | 0.35% | – | 35,169 | 1.26% | – | -734,759 | -26.42% | 2,781,446 | 1,103,518 | 39.7% |
| Massachusetts | 1,995,196 | 60.01% | 11 | 1,090,893 | 32.81% | – | 138,018 | 4.15% | – | 47,661 | 1.43% | – | 2,719 | 0.08% | – | 50,559 | 1.52% | – | -904,303 | -27.20% | 3,325,046 | 1,329,850 | 40.0% |
| Michigan | 2,268,839 | 47.27% | – | 2,279,543 | 47.50% | 16 | 172,136 | 3.59% | – | 51,463 | 1.07% | – | 8,177 | 0.17% | – | 19,126 | 0.40% | – | 10,704 | 0.23% | 4,799,284 | 2,519,741 | 52.5% |
| Minnesota | 1,367,716 | 46.44% | 10 | 1,322,951 | 44.92% | – | 112,972 | 3.84% | – | 36,985 | 1.26% | – | 53,076 | 1.80% | – | 51,113 | 1.74% | – | -44,765 | -1.52% | 2,944,813 | 1,577,097 | 53.6% |
| Mississippi | 485,131 | 40.06% | – | 700,714 | 57.86% | 6 | 14,435 | 1.19% | – | 3,731 | 0.31% | – | – | – | – | 5,346 | 0.44% | – | 215,583 | 17.83% | 1,209,357 | 508,643 | 42.1% |
| Missouri | 1,071,068 | 38.14% | – | 1,594,511 | 56.77% | 10 | 97,359 | 3.47% | – | 25,419 | 0.91% | – | 7,071 | 0.25% | – | 13,177 | 0.47% | – | 523,443 | 18.64% | 2,808,605 | 1,214,094 | 43.2% |
| Montana | 177,709 | 35.75% | – | 279,240 | 56.17% | 3 | 28,037 | 5.64% | – | 7,970 | 1.60% | – | 2,297 | 0.46% | – | 1,894 | 0.38% | – | 101,531 | 20.42% | 497,147 | 217,907 | 43.8% |
| Nebraska‡ | 284,494 | 33.70% | – | 495,961 | 58.75% | 2 | 38,946 | 4.61% | – | 8,775 | 1.04% | – | – | – | – | 16,051 | 1.90% | – | 211,467 | 25.05% | 844,227 | 348,266 | 41.3% |
| Nebraska-1 | 100,132 | 35.46% | – | 158,642 | 56.18% | 1 | 14,033 | 4.97% | – | 3,374 | 1.19% | – | – | – | – | 6,181 | 2.19% | – | 58,500 | 20.72% | 282,338 | 123,696 | 43.8% |
| Nebraska-2 | 131,030 | 44.92% | – | 137,564 | 47.16% | 1 | 13,245 | 4.54% | – | 3,347 | 1.15% | – | – | – | – | 6,494 | 2.23% | – | 6,534 | 2.24% | 291,680 | 154,116 | 52.8% |
| Nebraska-3 | 53,332 | 19.73% | – | 199,755 | 73.92% | 1 | 11,668 | 4.32% | – | 2,054 | 0.76% | – | – | – | – | 3,451 | 1.28% | – | 146,367 | 54.19% | 270,109 | 70,354 | 26.0% |
| Nevada | 539,260 | 47.92% | 6 | 512,058 | 45.50% | – | 37,384 | 3.29% | – | – | – | – | – | – | – | 36,683 | 3.23% | – | -27,202 | -2.42% | 1,125,385 | 586,125 | 52.1% |
| New Hampshire | 348,526 | 46.98% | 4 | 345,790 | 46.61% | – | 30,777 | 4.15% | – | 6,496 | 0.88% | – | 1,064 | 0.14% | – | 11,643 | 1.24% | – | -2,736 | -0.37% | 744,296 | 395,770 | 53.2% |
| New Jersey | 2,148,278 | 55.45% | 14 | 1,601,933 | 41.35% | – | 72,477 | 1.87% | – | 37,772 | 0.98% | – | – | – | – | 13,586 | 0.35% | – | -546,345 | -14.10% | 3,874,046 | 1,725,768 | 44.5% |
| New Mexico | 385,234 | 48.26% | 5 | 319,667 | 40.04% | – | 74,541 | 9.34% | – | 9,879 | 1.24% | – | 5,825 | 0.73% | – | 3,173 | 0.40% | – | -65,567 | -8.21% | 798,319 | 413,085 | 51.7% |
| New York | 4,556,124 | 59.01% | 29 | 2,819,534 | 36.52% | – | 176,598 | 2.29% | – | 107,934 | 1.40% | – | 10,373 | 0.13% | – | 50,890 | 0.66% | – | -1,736,590 | -22.49% | 7,721,453 | 3,165,329 | 41.0% |
| North Carolina | 2,189,316 | 46.17% | – | 2,362,631 | 49.83% | 15 | 130,126 | 2.74% | – | 12,105 | 0.26% | – | – | – | – | 47,386 | 1.00% | – | 173,315 | 3.66% | 4,741,564 | 2,378,933 | 50.2% |
| North Dakota | 93,758 | 27.23% | – | 216,794 | 62.96% | 3 | 21,434 | 6.22% | – | 3,780 | 1.10% | – | – | – | – | 8,594 | 2.49% | – | 123,036 | 35.73% | 344,360 | 127,566 | 37.0% |
| Ohio | 2,394,164 | 43.56% | – | 2,841,005 | 51.69% | 18 | 174,498 | 3.17% | – | 46,271 | 0.84% | – | 12,574 | 0.23% | – | 27,975 | 0.51% | – | 446,841 | 8.13% | 5,496,487 | 2,655,482 | 48.3% |
| Oklahoma | 420,375 | 28.93% | – | 949,136 | 65.32% | 7 | 83,481 | 5.75% | – | – | – | – | – | – | – | 528,761 | 37.08% | 1,452,992 | 503,856 | 34.7% |
| Oregon | 1,002,106 | 50.07% | 7 | 782,403 | 39.09% | – | 94,231 | 4.71% | – | 50,002 | 2.50% | – | – | – | – | 72,594 | 3.63% | – | -219,703 | -10.98% | 2,001,336 | 999,230 | 49.9% |
| Pennsylvania | 2,926,441 | 47.46% | – | 2,970,733 | 48.18% | 20 | 146,715 | 2.38% | – | 49,941 | 0.81% | – | 6,472 | 0.11% | – | 65,176 | 1.06% | – | 44,292 | 0.72% | 6,165,478 | 3,194,745 | 51.8% |
| Rhode Island | 252,525 | 54.41% | 4 | 180,543 | 38.90% | – | 14,746 | 3.18% | – | 6,220 | 1.34% | – | 516 | 0.11% | – | 9,584 | 2.07% | – | -71,982 | -15.51% | 464,144 | 211,619 | 45.6% |
| South Carolina | 855,373 | 40.67% | – | 1,155,389 | 54.94% | 9 | 49,204 | 2.34% | – | 13,034 | 0.62% | – | 21,016 | 1.00% | – | 9,011 | 0.43% | – | 300,016 | 14.27% | 2,103,027 | 947,638 | 45.1% |
| South Dakota | 117,458 | 31.74% | – | 227,721 | 61.53% | 3 | 20,850 | 5.63% | – | – | – | – | – | – | – | 4,064 | 1.10% | – | 110,263 | 29.79% | 370,093 | 142,372 | 38.5% |
| Tennessee | 870,695 | 34.72% | – | 1,522,925 | 60.72% | 11 | 70,397 | 2.81% | – | 15,993 | 0.64% | – | 11,991 | 0.48% | – | 16,026 | 0.64% | – | 652,230 | 26.01% | 2,508,027 | 985,102 | 39.3% |
| Texas | 3,877,868 | 43.24% | – | 4,685,047 | 52.23% | 38 | 283,492 | 3.16% | – | 71,558 | 0.80% | – | 42,366 | 0.47% | – | 8,895 | 0.10% | – | 807,179 | 8.99% | 8,969,226 | 4,284,179 | 47.8% |
| Utah | 310,676 | 27.46% | – | 515,231 | 45.54% | 6 | 39,608 | 3.50% | – | 9,438 | 0.83% | – | 243,690 | 21.54% | – | 12,787 | 1.13% | – | 204,555 | 18.08% | 1,131,430 | 616,199 | 54.5% |
| Vermont | 178,573 | 56.68% | 3 | 95,369 | 30.27% | – | 10,078 | 3.20% | – | 6,758 | 2.14% | – | 639 | 0.20% | – | 23,650 | 7.51% | – | -83,204 | -26.41% | 315,067 | 136,494 | 43.3% |
| Virginia | 1,981,473 | 49.73% | 13 | 1,769,443 | 44.41% | – | 118,274 | 2.97% | – | 27,638 | 0.69% | – | 54,054 | 1.36% | – | 33,749 | 0.85% | – | -212,030 | -5.32% | 3,984,631 | 2,003,158 | 50.3% |
| Washington | 1,742,718 | 52.54% | 12 | 1,221,747 | 36.83% | – | 160,879 | 4.85% | – | 58,417 | 1.76% | – | – | – | – | 133,258 | 4.02% | – | -520,971 | -15.71% | 3,317,019 | 1,574,301 | 47.5% |
| West Virginia | 188,794 | 26.43% | – | 489,371 | 68.50% | 5 | 23,004 | 3.22% | – | 8,075 | 1.13% | – | 1,104 | 0.15% | – | 4,075 | 0.57% | – | 300,577 | 42.07% | 714,423 | 225,052 | 31.5% |
| Wisconsin | 1,382,536 | 46.45% | – | 1,405,284 | 47.22% | 10 | 106,674 | 3.58% | – | 31,072 | 1.04% | – | 11,855 | 0.40% | – | 38,729 | 1.30% | – | 22,748 | 0.77% | 2,976,150 | 1,570,866 | 52.8% |
| Wyoming | 55,973 | 21.88% | – | 174,419 | 68.17% | 3 | 13,287 | 5.19% | – | 2,515 | 0.98% | – | – | – | – | 9,665 | 3.78% | – | 118,446 | 46.29% | 255,849 | 81,430 | 31.8% |
| Total | 65,853,516 | 48.18% | 227 | 62,984,825 | 46.09% | 304 | 4,489,221 | 3.28% | – | 1,457,216 | 1.07% | – | 731,788 | 0.54% | – | 1,152,671 | 0.84% | – | -2,868,691 | -2.10% | 136,669,237 | **70,815,721** | **51.8%** |
|  | Hillary Clinton |  |  | Donald Trump |  |  | Gary Johnson |  |  | Jill Stein |  |  | Evan McMullin |  |  | Others |  |  | Margin |  | Total Votes | Votes Discarded | Votes Discarded % |

**Appendix D**

Source: https://en.wikipedia.org/wiki/2020_United_States_presidential_election

**2020 Election Results by State - Electoral Votes Allocated by the Proportional Method**

| State or District | Biden/Harris Democratic Votes | % | EV | Trump/Pence Republican Votes | % | EV | Votes Discarded | Votes Discarded % | Proportional Electoral Votes EV | Biden | Trump |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 849,624 | 36.57% | – | 1,441,170 | 62.03% | 9 | 882,112 | 38.0% | 9 | 3.3 | 5.7 |
| Alaska | 153,778 | 42.77% | – | 189,951 | 52.83% | 3 | 169,579 | 47.2% | 3 | 1.3 | 1.7 |
| Arizona* | 1,672,143 | 49.36% | 11 | 1,661,686 | 49.06% | – | 1,715,183 | 50.6% | 11 | 5.5 | 5.5 |
| Arkansas | 423,932 | 34.78% | – | 760,647 | 62.40% | 6 | 458,422 | 37.6% | 6 | 2.1 | 3.9 |
| California | 11,110,639 | 63.48% | 55 | 6,006,518 | 34.32% | – | 6,390,741 | 36.5% | 55 | 35.7 | 19.3 |
| Colorado | 1,804,352 | 55.40% | 9 | 1,364,607 | 41.90% | – | 1,452,628 | 44.6% | 9 | 5.1 | 3.9 |
| Connecticut | 1,080,831 | 59.26% | 7 | 714,717 | 39.19% | – | 743,026 | 40.7% | 7 | 4.2 | 2.8 |
| Delaware | 296,268 | 58.74% | 3 | 200,603 | 39.77% | – | 208,078 | 41.3% | 3 | 1.8 | 1.2 |
| D.C. | 317,323 | 92.15% | 3 | 18,586 | 5.40% | – | 27,033 | 7.9% | 3 | 2.8 | 0.2 |
| Florida | 5,297,045 | 47.86% | – | 5,668,731 | 51.22% | 29 | 5,398,725 | 48.8% | 29 | 14.0 | 15.0 |
| Georgia | 2,473,633 | 49.47% | 16 | 2,461,854 | 49.24% | – | 2,526,327 | 50.5% | 16 | 8.0 | 8.0 |
| Hawaii | 366,130 | 63.73% | 4 | 196,864 | 34.27% | – | 208,339 | 36.3% | 4 | 2.6 | 1.4 |
| Idaho | 287,021 | 33.07% | – | 554,119 | 63.84% | 4 | 313,815 | 36.2% | 4 | 1.4 | 2.6 |
| Illinois | 3,471,915 | 57.54% | 20 | 2,446,891 | 40.55% | – | 2,561,829 | 42.5% | 20 | 11.7 | 8.3 |
| Indiana | 1,242,498 | 40.96% | – | 1,729,857 | 57.03% | 11 | 1,303,353 | 43.0% | 11 | 4.6 | 6.4 |
| Iowa | 759,061 | 44.89% | – | 897,672 | 53.09% | 6 | 793,199 | 46.9% | 6 | 2.7 | 3.3 |
| Kansas | 570,323 | 41.51% | – | 771,406 | 56.14% | 6 | 602,580 | 43.9% | 6 | 2.6 | 3.4 |
| Kentucky | 772,474 | 36.15% | – | 1,326,646 | 62.09% | 8 | 810,122 | 37.9% | 8 | 2.9 | 5.1 |
| Louisiana | 856,034 | 39.85% | – | 1,255,776 | 58.46% | 8 | 892,286 | 41.5% | 8 | 3.2 | 4.8 |
| Maine† | 435,072 | 53.09% | 2 | 360,737 | 44.02% | – | 384,389 | 46.9% | 2 | 1.1 | 0.9 |
| Maine-1 | 266,376 | 60.11% | 1 | 164,045 | 37.02% | – | 176,736 | 39.9% | 1 | 0.6 | 0.4 |
| Maine-2 | 168,696 | 44.82% | – | 196,692 | 52.26% | 1 | 179,657 | 47.7% | 1 | 0.5 | 0.5 |
| Maryland | 1,985,023 | 65.36% | 10 | 976,414 | 32.15% | – | 1,052,007 | 34.6% | 10 | 6.7 | 3.3 |
| Massachusett | 2,382,202 | 65.60% | 11 | 1,167,202 | 32.14% | – | 1,249,000 | 34.4% | 11 | 7.4 | 3.6 |
| Michigan | 2,804,040 | 50.62% | 16 | 2,649,852 | 47.84% | – | 2,735,262 | 49.4% | 16 | 8.2 | 7.8 |
| Minnesota | 1,717,077 | 52.40% | 10 | 1,484,065 | 45.28% | – | 1,560,094 | 47.6% | 10 | 5.4 | 4.6 |
| Mississippi | 539,398 | 41.06% | – | 756,764 | 57.60% | 6 | 556,995 | 42.4% | 6 | 2.5 | 3.5 |
| Missouri | 1,253,014 | 41.41% | – | 1,718,736 | 56.80% | 10 | 1,307,226 | 43.2% | 10 | 4.2 | 5.8 |
| Montana | 244,786 | 40.55% | – | 343,602 | 56.92% | 3 | 260,072 | 43.1% | 3 | 1.2 | 1.8 |
| Nebraska† | 374,583 | 39.17% | – | 556,846 | 58.22% | 2 | 399,537 | 41.8% | 2 | 0.8 | 1.2 |
| Nebraska-1 | 132,261 | 41.09% | – | 180,290 | 56.01% | 1 | 141,596 | 44.0% | 1 | 0.4 | 0.6 |
| Nebraska-2 | 176,468 | 51.95% | 1 | 154,377 | 45.45% | – | 163,198 | 48.0% | 1 | 0.5 | 0.5 |
| Nebraska-3 | 65,854 | 22.34% | – | 222,179 | 75.36% | 1 | 72,652 | 24.6% | 1 | 0.2 | 0.8 |
| Nevada | 703,486 | 50.06% | 6 | 669,890 | 47.67% | – | 701,890 | 49.9% | 6 | 3.1 | 2.9 |
| New | 424,937 | 52.71% | 4 | 365,660 | 45.36% | – | 381,268 | 47.3% | 4 | 2.1 | 1.9 |
| New Jersey | 2,608,400 | 57.33% | 14 | 1,883,313 | 41.40% | – | 1,941,057 | 42.7% | 14 | 8.1 | 5.9 |
| New Mexico | 501,614 | 54.29% | 5 | 401,894 | 43.50% | – | 422,351 | 45.7% | 5 | 2.8 | 2.2 |
| New York | 5,244,886 | 60.87% | 29 | 3,251,997 | 37.74% | – | 3,371,915 | 39.1% | 29 | 17.9 | 11.1 |
| North Carolina | 2,684,292 | 48.59% | – | 2,758,775 | 49.93% | 15 | 2,766,029 | 50.1% | 15 | 7.4 | 7.6 |
| North Dakota | 115,042 | 31.78% | – | 235,751 | 65.12% | 3 | 126,273 | 34.9% | 3 | 1.0 | 2.0 |
| Ohio | 2,679,165 | 45.24% | – | 3,154,834 | 53.27% | 18 | 2,767,368 | 46.7% | 18 | 8.3 | 9.7 |
| Oklahoma | 503,890 | 32.29% | – | 1,020,280 | 65.37% | 7 | 540,419 | 34.6% | 7 | 2.3 | 4.7 |
| Oregon | 1,340,383 | 56.45% | 7 | 958,448 | 40.37% | – | 1,033,938 | 43.5% | 7 | 4.1 | 2.9 |
| Pennsylvania | 3,458,229 | 50.02% | 20 | 3,377,674 | 48.69% | – | 3,478,747 | 50.1% | 20 | 10.1 | 9.9 |
| Rhode Island | 307,486 | 59.39% | 4 | 199,922 | 38.61% | – | 210,271 | 40.6% | 4 | 2.4 | 1.6 |
| South | 1,091,541 | 43.43% | – | 1,385,103 | 55.11% | 9 | 1,128,226 | 44.9% | 9 | 4.0 | 5.0 |
| South Dakota | 150,471 | 35.61% | – | 261,043 | 61.77% | 3 | 161,566 | 38.2% | 3 | 1.1 | 1.9 |
| Tennessee | 1,143,711 | 37.45% | – | 1,852,475 | 60.66% | 11 | 1,201,376 | 39.3% | 11 | 4.2 | 6.8 |
| Texas | 5,259,126 | 46.48% | – | 5,890,347 | 52.06% | 38 | 5,424,709 | 47.9% | 38 | 17.9 | 20.1 |
| Utah | 560,282 | 37.65% | – | 865,140 | 58.13% | 6 | 623,149 | 41.9% | 6 | 2.4 | 3.6 |
| Vermont | 242,820 | 66.09% | 3 | 112,704 | 30.67% | – | 124,608 | 33.9% | 3 | 2.0 | 1.0 |
| Virginia | 2,413,568 | 54.11% | 13 | 1,962,430 | 44.00% | – | 2,046,956 | 45.9% | 13 | 7.2 | 5.8 |
| Washington | 2,369,612 | 57.97% | 12 | 1,584,651 | 38.77% | – | 1,718,019 | 42.0% | 12 | 7.2 | 4.8 |
| West Virginia | 235,984 | 29.69% | – | 545,382 | 68.62% | 5 | 249,349 | 31.4% | 5 | 1.5 | 3.5 |
| Wisconsin | 1,630,866 | 49.45% | 10 | 1,610,184 | 48.82% | – | 1,667,175 | 50.6% | 10 | 5.0 | 5.0 |
| Wyoming | 73,491 | 26.55% | – | 193,559 | 69.94% | 3 | 83,206 | 30.1% | 3 | 0.8 | 2.2 |
| **Total** | **81,283,501** | **51.31%** | **306** | **74,223,975** | **46.85%** | **232** | **77,146,130** | **48.7%** | **538** | **281.2** | **256.8** |
| | Biden/Harris | | | Trump/Pence | | | Votes Discarded | Votes Discarded % | EV | Biden | Trump |