UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEWIS Y. LIU,

                          Plaintiff,

              v.

KATHLEEN HOCHUL, ET AL.,

                          Defendants.

24 Civ. 5137 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

Lewis Y. Liu, Plaintiff, brings this action against Defendants Kathleen Hochul, sued in her official capacity, the New York State Board of Elections ("NYS BOE"), and NYS BOE Co-Chairs Peter S. Kowsinski and Henry T Berger, sued in their official capacities (collectively, "Defendants").  Compl. at 1, ECF No. 4.[1]  Plaintiff alleges various constitutional violations stemming from New York State's use of a "winner-take-all" ("WTA") system for choosing electors for the President and Vice President of the United States.  *Id.*  He claims that this system violates the "one person, one vote" principle of the Equal Protection Clause, the Due Process Clause of the Fourteenth Amendment, and his First Amendment right to free speech.  *Id.* at 12-13.  Before the Court is Defendants' motion to dismiss, seeking dismissal of all claims pursuant to Rules 12(b)(1) and 12(b)(6).  *See* Mem. Supp. Defs.' Mot. Dismiss ("Defs.' Br.") at 1, ECF No. 14.[2]  For the reasons below, Defendants' motion to dismiss is **GRANTED**.

---

[1] Plaintiff's complaint is not in paragraph form as required by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. Rules 10(b).  Thus, all references to the Complaint refer to page numbers, not paragraph numbers.

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.  All references to Rules are to the Federal Rules of Civil Procedure.

**BACKGROUND**

Plaintiff Lewis Liu is a registered Republican voter in the state of New York who brings this action against various New York State officials responsible for overseeing the election process.  *See* Compl. at 1.  Plaintiff raises a facial constitutional challenge to New York's WTA system for allocating its Electoral College votes,[3] and seeks (1) a declaration of WTA's unconstitutionality; and (2) an injunction preventing any state from using a WTA system in future presidential elections.  *Id.*  Plaintiff argues that because, under New York's WTA system, the state has allocated all of its electors to the Democratic party candidate since 1984 and will most likely continue to do so, Plaintiff's vote (and all votes for a presidential candidate not nominated by the Democratic Party) will "be debased to zero value" since they will not have political effect after they are counted.  *Id.*; *see also id.* at 6, 11.  This, according to Plaintiff, constitutes a violation of the First Amendment right to free speech, violates the "one person, one vote" principle enshrined in the Equal Protection Clause, and violates the Due Process Clause.  *Id.* at 12-13.[4]

---

[3] Technically, New York does not allocate its Electoral College votes directly.  Rather, voters cast their ballots for presidential and vice-presidential candidates, and such votes are "deemed to be cast for the candidates for elector" from those candidates' respective political parties.  N.Y. Elec. Law § 12-100 (2022).  For ease of reference, this Opinion refers to the "allocation of Electoral College votes," rather than the "election of Electoral College electors."

[4] This case is the latest of several election-related lawsuits filed by Plaintiff in this District.  In 2017, Liu sued then-Speaker of the House Paul Ryan, Representative Nancy Pelosi, Senator Mitch McConnell, and Senator Chuck Schumer, requesting a declaratory judgment holding the Electoral College system itself to be an unconstitutional violation of the Fourteenth Amendment's Equal Protection Clause; the case was dismissed on standing grounds.  *Liu v. Ryan*, No. 16 Civ. 9651, 2017 WL 4350590, at *1 (S.D.N.Y. July 10, 2017), *aff'd*, 724 F. App'x 92 (2d Cir. 2018) (summary order).  In 2019, Liu and the Equal Vote America Corporation sued the entirety of Congress and various members in their official capacities, challenging "the varying sizes of congressional districts across states."  *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 507 (S.D.N.Y. 2019).  This case was also dismissed on standing grounds.  *See id.* at 508-11.  In 2021, Liu sued the Democratic National Committee for allegedly violating multiple constitutional provisions due to its rule preventing any but four states from holding a primary election for its presidential nominee before a certain date; this case was also dismissed on standing (and ripeness) grounds.  *See Liu v. Democratic Nat'l Comm.*, No. 21 Civ. 767, 2021 WL 5351886, at *1-2

Defendants have filed motions to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6). Defs.' Br. at 1-2. They argue that Plaintiff lacks standing to sue because he has failed to state a concrete and particularized injury in fact and this Court cannot provide the remedies he seeks. *See id.* at 9-13. Second, they argue that Plaintiff has failed to state a claim for relief because WTA does not violate any constitutional provisions and is within the state legislature's constitutional authority to implement. *See id.* at 13-17.

## LEGAL STANDARDS

Rule 12(b)(1) requires the court to dismiss a claim for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, *S.a.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015). A plaintiff asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To do so, the plaintiff must allege facts that "affirmatively and plausibly suggest" that they have standing to sue. *Cortlandt*, 790 F.3d at 417 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). The court must "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Id.* (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)).

Under 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote*

---

(S.D.N.Y. Nov. 15, 2021), *aff'd*, No. 21 Civ. 3021, 2022 WL 4372587 (2d Cir. Sept. 22, 2022). And in 2024, before bringing this case, Liu sued New York State Assembly Minority Leader Carl Heastie and others alleging claims, similar to those alleged here, that WTA elections violate the Fourteenth Amendment. *Liu v. Heastie*, No. 24 Civ. 812, 2024 WL 3087534, at *1 (S.D.N.Y. June 20, 2024) (dismissing case for lack of subject matter jurisdiction based on legislative immunity).

*v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts "all [non-conclusory] factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).

However, a court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action." *Sacerdote*, 9 F.4th at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While all the allegations contained within the complaint are assumed to be true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Standing

Defendants contend that Plaintiff lacks standing to challenge New York's WTA allocation of Electoral College votes because (1) Plaintiff's alleged injury is generalized, abstract, and widely shared;[5] and (2) his injury cannot be redressed by the judiciary. *See* Defs.' Br. at 8.

The Second Circuit has not addressed whether a plaintiff has standing in the circumstances here. In *Williams v. Virginia State Board of Elections*, 393 U.S. 320 (1969), *reh'g denied*, 393 U.S. 1112 (1969) (per curiam), the Supreme Court summarily affirmed a three-judge

---

[5] Defendants also suggested that the injury was hypothetical because it was "conjectural and abstract," as the 2024 Presidential Election had not yet taken place. Defs.' Br. at 10. The 2024 election has now transpired, and the Court takes judicial notice of the fact that New York's Electoral College votes were indeed allocated on a winner-take-all basis. *See* N.Y. State Bd. of Elections, *Amended Certified November 5, 2024 General Election Results*, at https://elections.ny.gov/amended-certified-november-5-2024-general-election-results-approved-02252025 (last visited Apr. 8, 2025); *Piccolo v. N.Y.C. Campaign Fin. Bd.*, No. 05 Civ. 7040, 2007 WL 2844939, at *2 n.2 (S.D.N.Y. Sept. 28, 2007) (taking judicial notice of election results); *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 454 n.174 (S.D.N.Y. 2004), *aff'd*, 543 U.S. 997 (2004) (same).

district court decision holding that the plaintiffs challenging Virginia's WTA system had standing to sue, but that their claim failed on the merits.  While it is only the judgment that is affirmed, and thus "the rationale of the affirmance may not be gleaned solely from the opinion below," *see Mandel v. Bradley*, 432 U.S. 173, 176 (1977), two Circuits have subsequently addressed whether voters have standing to challenge WTA systems of allocating Electoral College votes, both answering in the affirmative.[6]  The First Circuit held in *Lyman v. Baker* that the plaintiffs in that case had standing to challenge Massachusetts's WTA system under, *inter alia*, the Fourteenth Amendment, based on the theory that the Commonwealth's WTA system "discard[s]" votes for a losing candidate when another candidate wins (and takes all) of Massachusetts's Electoral College votes.  954 F.3d 351, 357 (1st Cir. 2020).  The Fourth Circuit reasoned similarly in *Baten v. McMaster*, holding that the plaintiffs challenging South Carolina's WTA system on First and Fourteenth Amendment grounds had "alleged . . . individualized injuries that are traceable to South Carolina's implementation of the challenged winner-take-all system and that the injuries can be redressed by a court order enjoining use of the system."  967 F.3d 345, 353 (4th Cir. 2020).

With these decisions in mind, the Court now turns to Defendants' arguments on standing.  First, the fact that this harm is "widely shared" does not preclude standing, because the important question is whether the harm is abstract; the "widely shared" nature is merely probative of the abstractness.  *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) ("Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury

---

[6] The Fifth and Ninth Circuits addressed the merits of a similar claim, but standing was not an issue on appeal.  *See League of United Latin Am. Citizens v. Abbott*, 951 F.3d 311 (5th Cir. 2020); *Rodriguez v. Newsom*, 974 F.3d 998 (9th Cir. 2020).

in fact.'"). The injury here is concrete: because all of New York's electors were pledged to vote for the plurality winner in the 2024 Presidential Election, Plaintiff's preferred candidate received zero electoral votes despite receiving a substantial share of the vote due to the WTA system. *See* Compl. at 14. This kind of injury "is the type of concrete, particularized injury that Article III contemplates." *Baten*, 967 F.3d at 353.

As to redressability, this injury is redressable. As the First Circuit held in *Lyman*, the manner of appointing presidential electors, "it is not beyond judicial review;" "[o]n the contrary, it is 'always subject to the limitation that it may not be exercised in a way that violates other specific provisions of the Constitution.'" 954 F.3d at 364 (quoting *Williams v. Rhodes*, 393 U.S. 23, 29 (1968)); *accord Rhodes*, 393 U.S. at 29 ("[N]o State can pass a law regulating elections that violates the Fourteenth Amendment[.]"). Accordingly, while it may be the case that a court lacks authority to order that the State adopt any particular elector-selection method, a court is "well within the scope of [its] authority" to determine the constitutionality of the existing system and, if it were held unconstitutional, to "enjoin its use without requiring [New York] to adopt [any] preferred proportional allocation system." *Lyman*, 954 F.3d at 362.

Accordingly, following the reasoning of the First and Fourth Circuits, the Court concludes that Plaintiff has standing to challenge New York's WTA system.

## II.    Defendants' Merits Arguments

The Court now turns to Defendants' merits arguments under Rule 12(b)(6) and concludes that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's principal claim is that New York's WTA allocation of its Electoral College votes violates the Equal Protection Clause, which guarantees that "equal weight [is] accorded to each vote and the equal dignity owed to each voter" is given. *Bush v. Gore*, 531 U.S. 98, 104 (2000). The Clause's one person, one vote principle "[e]nsure[s] that each person's vote counts as much, insofar as it [i]s

practicable, as any other person's." *Hadley v. Junior Coll. Dist. of Metro. Kan. City*, 397 U.S. 50, 54 (1970).  It guarantees that "every voter is equal to every other voter in his State, when he casts his ballot." *Reynolds v. Sims*, 377 U.S. 533, 558 (1964).

Plaintiff claims that WTA has violated one person, one vote because his vote is "debased to zero value in allocating electoral votes," effectively disenfranchising him and all those who vote for losing candidates.  Compl. at 11.  As noted above, the Supreme Court summarily affirmed a decision rejecting this precise argument in *Williams*.  *See* 393 U.S. 320 (1969).  While summary affirmances are "not [to] be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved," *Mandel*, 432 U.S. at 176, they "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions."  *Id.*  The First Circuit therefore concluded in *Lyman* that the Supreme Court's summary affirmance in "*Williams* decides the core equal protection issue presented" on a one-person, one-vote challenge to WTA systems.  954 F.3d at 366.  Other Circuits, including the Fourth, Fifth, and Ninth, have concluded similarly.  *See, e.g.*, *Baten*, 967 F.3d at 355 (holding that WTA does not violate one person, one vote which was "precisely the position articulated by the three-judge district court in *Williams* while rejecting a challenge to the winner-take-all system"); *League of United Latin Am. v. Abbott*, 951 F.3d 311, 314-15 (5th Cir. 2020) (calling *Williams* a "giant barrier" to a challenge to WTA and noting "the *Williams* plaintiffs made a nearly identical one-person, one-vote challenge to a functionally indistinguishable WTA system" and "[u]nsurprisingly, every district court to confront the plaintiffs' argument has held that *Williams* controls"); *Rodriguez v. Newsom*, 974 F.3d 998, 1002 (9th Cir. 2020) ("We join our three sister circuits to have considered the issue in holding that, under *Williams*, a State's use of WTA to select its presidential electors is consistent with the

Constitution's guarantee of equal protection.").  Plaintiff offers no reason why this Court should not consider *Williams* binding on this question, and the Court, therefore, declines to depart from it.

Plaintiff's Complaint also references purported violations of the First Amendment and the Fourteenth Amendment's Due Process Clause.  *Williams* did not involve First Amendment or due process claims, *see Rodriguez*, 974 F.3d at 1009, and there is no controlling precedent in the Second Circuit regarding such challenges to WTA systems.  Plaintiff's Complaint, however, is bare-bones in its allegations under these theories.  With respect to the First Amendment, he states that "voters' first amendment rights were completely deprived of when their votes are reduced to zero value in determining the presidential elections' outcome."  Compl. at 12.  This claim is premised on Plaintiff's vote being reduced to "zero value," and so while it is styled as a "First Amendment" claim, it is in substance identical to Plaintiff's Equal Protection Claim.  It therefore fails for the same reason as Plaintiff's Equal Protection Claim.[7]

Finally, Plaintiff articulates his due process claim as follows: "[t]here is neither textual provision in the Constitution nor the State's election law to support the WTA method."  *Id.*  His latter point is plainly incorrect, as New York State Election Law spells out clearly how the State's Electoral College votes are allocated.  *See* N.Y. Elec. Law § 12-100 (2022).  His former point—that there is no textual support in the U.S. Constitution for WTA systems—is irrelevant, as Plaintiff cites no authority for the proposition that the Due Process Clause requires that an election system generally, or a method of allocating Electoral College votes specifically, be described in the federal

---

[7] The Court expresses no view on whether a First Amendment claim against a WTA system articulated in a different manner could be viable.  *But see Lyman*, 954 F.3d at 377 ("That one's candidate of choice does not prevail at the ballot box simply does not translate into an associational rights violation.").

Constitution.  Ultimately, his due process claim is essentially the same as his equal protection claim; the dismissal of the latter claim compels dismissal of the former.  *See 20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 23 Civ. 930, 2024 WL 1597642, at *2 (2d Cir. Apr. 12, 2024) (affirming dismissal of the plaintiffs' "substantive due process claim [where it] rests on the same set of factual allegations . . . as their equal protection claims," which the district court also dismissed).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is **GRANTED** pursuant to Rule 12(b)(6).  The Clerk of the Court is respectfully requested to terminate ECF No. 13 and to close the case.

Dated: April 9, 2025
     New York, New York

DALE E. HO
United States District Judge
